3:22-mj-00208

DISTRICT OF OREGON: ss,                           AFFIDAVIT OF GUY GINO


**Affidavit in Support of a Criminal Complaint**

I, Guy Gino, being first duly sworn, hereby depose and state as follows:

**Introduction and Agent Background**

1.         I am a Special Agent (SA) with Homeland Security Investigations (HSI) and have been so employed since 2003.   I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7) and I am authorized by law to conduct investigations and to make arrests for felony offenses.  I am currently assigned to the Assistant Special Agent in Charge, Portland, Oregon.  Prior to this, I was employed as a U.S. Border Patrol Agent and have been a federal law enforcement officer since September 1996.  I am authorized and assigned to investigate violations of federal laws, including 21 U.S.C. §§ 841(a)(1), 846,  848, and 843(b) of the Drug Abuse Prevention and Control Act of 1970; that is, possession with intent to distribute and the distribution of controlled substances, conspiracy to commit such offenses, the operation of a continuing criminal enterprise, and the use of a communication facility to facilitate a felony violation of the Drug Abuse Prevention and Control Act of 1970.  During my tenure as a federal law enforcement officer, I have investigated and/or participated in investigations of conspiracy, money laundering, narcotics trafficking, fraud, smuggling and theft.  I have also acquired knowledge and information about the illegal drug trade and the various means and methods by which it is furthered including through the use of computers, smart phones, digital media and the Internet from formal and informal training, other law enforcement officers and investigators, informants, individuals I have arrested and/or interviewed, and from my participation in other investigations.   I am currently detailed to the High Intensity Drug

**Affidavit of Special Agent Guy Gino**                                                      **Page 1**

Trafficking Area (HIDTA) Interdiction Taskforce (HIT) located at the Portland Police Bureau's (PPB) Narcotics and Organized Crime Division (NOC).

2.        This affidavit is based upon a joint investigation, conducted by the HIDTA Interdiction Task Force (HIT), Portland Police Bureau (PPB), and Homeland Security Investigations (HSI).

## Purpose of Affidavit

3.        This affidavit is submitted to support a criminal complaint and arrest warrant for Christopher Jacob PENNER, a Caucasian male, date of birth xx/xx/1995 (hereinafter referenced as "PENNER"), for committing the crimes of Possession with the Intent to Distribute a Controlled Substance (fentanyl, methamphetamine, and cocaine), Possession of a Firearm in Furtherance of a Drug Trafficking Offense, and Felon in Possession of a Firearm,  all in violation of Title 21, United States Code, Section 841(a)(1), 841(b)(1)(B), and 841(b)(1)(C); and, Title 18, United States Code, Sections 924(c) and 922(g)(1).

4.        I have obtained the facts set forth in this affidavit through my personal participation in the investigation described below; from oral and written reports of other law enforcement officers; and, from records, documents and other evidence obtained during this investigation.   I have obtained and read official reports prepared by law enforcement officers participating in this investigation and in other related investigations.

## Summary of Probable Cause

5.        On November 23, 2022, at approximately 7:54 a.m., Portland Police Bureau Officer Daniel Hall was conducting patrol duties downtown Portland, Oregon in the vicinity of SW 3rd Avenue and SW Ankeny Street.  This location was well known to Officer Hall as an area frequently used for street-level drug dealing.  Officer Hall and his fellow officers have observed

**Affidavit of Special Agent Guy Gino**                                                    **Page 2**

such drug dealing activity and there have been multiple calls by concerned citizens reporting open drug dealing activity in the area.

6.      At this location Officer Hall observed two individuals standing inside the parking lot between two parked vehicles.  Both vehicles were white and neither had a license plate.  As Officer Hall drove past the parking lot, he was able to observe that one vehicle was a mid-2000 Mercedes sedan and the other was an early 2000 Subaru Legacy.   One of the individuals was a Caucasian male, tall  average build wearing a white jacket with a black hood, blue-jeans and wearing a black fanny pack bag across his chest.  The other male was described as a black male of medium build and height wearing a Louis Vuitton style fanny pack bag across his chest.

7.      A few minutes later Officer Hall returned to the area of SW 3rd Avenue and SW Ankeny Street to continue his surveillance of the two individuals.  Upon Officer Hall's return, he could no longer see the individuals standing in the parking lot but he did notice that both the Mercedes and Subaru were now occupied and running.

8.      As Officer Hall got closer to the parking lot, he observed the Subaru depart and due to the vehicle not having license plates displayed, he performed a traffic stop.  As Officer Hall exited his marked patrol vehicle, the Subaru took off at a high rate of speed.  Officer Hall alerted other officers of the Subaru took off from the traffic stop and officers unsuccessfully attempted to locate the vehicle.  Officer Hall then went back to performing his normal patrol duties.  As he returned to the area of SW 3rd Avenue and SW Ankeny Street, in Portland, Oregon, he noted that the Mercedes Benz was still in the parking lot, with an occupant in the driver's seat and the engine running.

9.      Officer Hall parked his marked vehicle in the parking lot.  He did not activate his emergency lights.  Officer Hall observed the driver of the vehicle slumped or leaning froward in

**Affidavit of Special Agent Guy Gino**                                          **Page 3**

the driver's seat and he appeared to be sleeping.  Officer Hall was met by PPB Officer Arnold and they approached the vehicle to check on the occupant.

10.     As Officer Hall approached the vehicle from the driver's side, he immediately noticed that the driver appeared to be sleeping and was the same Caucasian male he observed standing in the parking lot 15 minutes earlier.  Looking through the driver's side window, Officer Hall also saw a large quantity of small blue pills in a clear bag in the center console of the car. Officer Hall immediately recognized that these pills appeared to be counterfeit blue M30 pain pills commonly manufactured with fentanyl.  He also observed a cellular phone and on the front passenger seat and a clear bag of white powder.  Officer Hall also observed that the black fanny pack bag that the individual wore across his chest earlier while standing in the parking lot was laying between the center console and to the driver.  A picture of the inside of the vehicle is below:



11.     Officers Hall and Arnold contacted the driver, escorted him out of the vehicle, and placed under arrest.  The driver, who was identified as PENNER was verbally issued his *Miranda*

**Affidavit of Special Agent Guy Gino**                                                                 **Page 4**

rights by Officer Hall.  PENNER stated he understood his rights.  Officer Hall then performed a search of PENNER's person incident to his arrest.  During the search, Officer Hall recovered a loaded Smith and Wesson 9mm handgun in PENNER's waistband.  A 9mm round was later located inside PENNER's right pocket.  I am familiar with Smith and Wesson handguns and I know that they are not manufactured within the District of Oregon and thus this firearm had traveled in interstate and/or foreign commerce prior to arriving here.  Officer Hall also located several baggies of white powdery substance on PENNER.  Some of the baggies were clear with an orange tint, while others were completely clear and tied up at the head to keep the substances from spilling out.  A large quantity of US currency was also located in PENNER's pocket.  Near where the driver was sitting inside the car, Officers located drugs, US currency, and drug packaging materials.

12.     The vehicle was ordered to be towed as evidence from the scene.  Prior to the vehicle being towed, Officers conducted an inventory search as per their department's policy.  Inside the black fanny pack that was next to the center console officers located a quantity of US currency, a small bag containing more blue M30 fentanyl pills, and apparent Xanax pills.  A digital scale that was located inside the vehicle's trunk.

13.     PENNER and the evidence were transported to PPB's Central Precinct and processed by members of PPB's Narcotics and Organized Crime unit (NOC) and the HIDTA Interdiction Task Force (HIT).

14.     At Central Precinct HSI TFO Verbout and PPB Officer Sparks processed the drug evidence by weighing and conducting presumptive tests of the substances. The following is an accounting of the narcotics that were able to be identified and tested positive using Mobile Detect Test Kits or the True Narc spectrometer by TFO Verbout (and pictured below):

**Affidavit of Special Agent Guy Gino**                                                              **Page 5**

- Approximately 230 grams of counterfeit blue M30 pills containing fentanyl, a Schedule II controlled substance (more than 2,000 pills);

- Approximately 97.2 grams of cocaine, a Schedule II controlled substance;

- Approximately 57.8 grams of methamphetamine, a Schedule II controlled substance;

- Approximately 142.4 grams of marijuana, a Schedule I controlled substance.

15.    The following is following is an accounting of the narcotics recovered that could not be tested on scene.

- Approximately 28.4 grams of suspected Dimethyltryptamine (DMT), a Schedule I controlled substance; and,

- Approximately 14.4 grams of suspected Xanax tablets (real Xanax tablets are made with Alprazolam, a Schedule IV controlled substance).



16.    At Central precinct I reviewed PENNER's criminal history and identified that he has prior felony convictions from Washington State, to include:

- Conviction for Robbery in the First Degree, on or about March 18, 2016, Clark County Superior Court, Vancouver, Washington, Case Number 151023764, for which he was sentenced to 48 months' imprisonment; and,

- Conviction for Burglary in the Second Degree, on or about March 18, 2016, Clark County Superior Court, Vancouver, Washington, Case Number 151016482, for which he was sentenced to 14 months' imprisonment.

17.    I know that drug traffickers are increasingly selling counterfeit M30 prescription pills that are manufactured with fentanyl, a Schedule II controlled substance.   These counterfeit pills are designed to replicate real 30 mg Oxycodone pills, which are round, blue in color, and stamped with an "M" and "30" on them.  Drug dealers regularly counterfeit these pills and, while attempting to replicate the round shape, the blue color, and the stamp of "M" and "30," they are instead manufacturing these pills with fentanyl as the active ingredient.  The counterfeit pills, while looking roughly similar to the real thing can sometimes be distinguished based upon their appearance.  The counterfeit M30 pills sometimes have a different shade of blue than the real thing and sometimes they are even manufactured in different colors, the edges of the pills and the stamped impressions are often rough and lack the precision of a real 30 mg Oxycodone pill, and sometimes the counterfeit pills will crumble easily under pressure.  I have seen and seized hundreds of thousands of these counterfeit M30 pills and of the samples submitted for forensic analysis lab reports have always confirmed the presence of fentanyl within them.  I also know it has become common knowledge in the drug trafficking community that these pills contain fentanyl.  I know a user amount of a counterfeit M30 pill is often one pill at a time, which can

**Affidavit of Special Agent Guy Gino**                                                    **Page 7**

either be ingested or burned and inhaled.  Depending on the level of addiction, some addicts will use between 5 to 15, or more pills in a day.  These pills can sell on the street to a user for between $2 to $10, or more.  Based upon my training and experience, I know that a person possessing more than approximately 2,000 of these counterfeit M30 pills does not possess them for purposes of personal use but rather possesses them for purposes of further distribution.

18.     I am also familiar with cocaine and how it is used and distributed.  I know that cocaine is typically ingested by inhaling the powder or by burning/smoking it and inhaling the smoke.  I know that cocaine is used in quantities of less than a gram at a time.  Based upon my training and experience, I know that a person possessing approximately 97 grams of cocaine possesses it for purposes of distribution.

19.     I am also familiar with methamphetamine and how it is used and distributed.  I know that methamphetamine is typically ingested by burning/smoking it and inhaling the smoke.  I know that methamphetamine is used in quantities of less than a gram.  Based upon my training and experience, I know that a person possessing approximately 57 grams of methamphetamine possesses it for purposes of distribution.

20.     I also know that drug trafficking is a dangerous business and that drug dealers often, with valid reasons, fear being robbed of their drugs and drug proceeds.  Accordingly, I know that firearms are considered "tools of the trade" for drug dealers and that they regularly arm themselves to protect themselves from being robbed, as well as to settle disputes with sources of supply and customers, and sometimes to prevent apprehension by law enforcement.  During an interview with PENNER he admitted he had the gun for protection because he had previously been robbed.

///

**Affidavit of Special Agent Guy Gino**                                          **Page 8**

## Conclusion

21.    Based on the foregoing, I have probable cause to believe, and I do believe, that Christopher Jacob PENNER, has committed the crimes of Possession with the Intent to Distribute a Controlled Substance (fentanyl, methamphetamine, and cocaine), Possession of a Firearm in Furtherance of a Drug Trafficking Offense, and Felon in Possession of a Firearm,  all in violation of Title 21, United States Code, Section 841(a)(1), 841(b)(1)(B), and 841(b)(1)(C); and, Title 18, United States Code, Sections 924(c) and 922(g)(1).  I therefore request that the Court issue a criminal complaint and arrest warrant for Christopher Jacob PENNER.

22.    Prior to being submitted to the Court, this affidavit, the accompanying complaint, and the arrest warrant were all reviewed by Assistant United States Attorney Scott Kerin.   AUSA Kerin advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

*By phone pursuant to Fed R. Crim. P. 4.1*
Guy Gino Special Agent
Homeland Security Investigations

Subscribed and sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at ___12:45 pm___ on November ___24___, 2022.

_____
HONORABLE JEFFREY ARMISTEAD
UNITED STATES MAGISTRATE JUDGE

**Affidavit of Special Agent Guy Gino**                                                              **Page 9**