SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB # 965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:22-cr-00429-IM |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| CHRISTOPHER JACOB PENNER, | |
| **Defendant.** | |

The government asks the Court to impose a sentence of 37 months' imprisonment, to be followed by a four-year term of supervised release.

The defendant was a street-level drug dealer who for the time he has been on pretrial supervision has ranged from high points involving periods of compliance with supervision, employment, and successful participation in substance abuse and mental health treatment, to low-points of relapse and a citation for being involved in a hit and run incident and being taken back into custody. Despite his best efforts the defendant continues to struggle with addiction. Given the nature of the case, defendant's advisory sentencing guidelines, the societal harm

**Government's Sentencing Memorandum**                                    **Page 1**

caused by the fentanyl and other drugs he was caught with, defendant's extremely early acceptance of responsibility, and the nature of defendant's prior convictions as well as his personal history and characteristics the government believes the requested sentence is both reasonable and justified.

## A.    Summary of Proceedings.

On April 30, 2025, the defendant pled guilty to Count 1 of the Indictment which charges him with Possession with Intent to Distribute Fentanyl, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B).  The maximum sentence the Court may impose is a term of 40 years' imprisonment, a fine of $5,000,000, and at least four years of supervised release.  There is also a potential mandatory minimum sentence of five years' imprisonment.  The count of conviction carries a $100 fee assessment.

A Presentence Report (PSR) has been completed.  The government believes the facts underlying the defendant's count of conviction (PSR ¶¶ 35 - 39), Sentencing Guideline calculations (PSR ¶¶ 44 - 53), Criminal History (PSR ¶¶ 56 – 64), personal history and characteristics (PSR ¶¶ 69 – 113) are accurately outlined in both the PSR and plea agreement. The government also believes defendant's conduct on Pretrial Supervision is also accurately outlined in the PSR.  PSR ¶¶ 21 – 34.

In his plea agreement defendant admitted that:

> The defendant admits that on or about November 23, 2022, here within the District of Oregon, he possessed approximately 230 grams of fentanyl for purposes of further distribution.  Fentanyl is a Schedule II controlled substance.  Trained law enforcement investigators would also testify that the amount of fentanyl possessed was possessed for purposes of further

///

**Government's Sentencing Memorandum**                                              **Page 2**

distribution.  At the time defendant was arrested he was also in possession of a firearm.

Plea Agreement ¶ 6.[1]

The defendant has been held in federal custody since his arrest.

**B.      Sentencing Guideline Calculations.**

The Court, "in determining the particular sentence to be imposed," is required to consider the "sentencing range established" by the U.S. Sentencing Guidelines.  18 U.S.C. § 3553(a)(4).  "The Guidelines are 'the starting point and the initial benchmark,'. . . and are to be kept in mind throughout the process."  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting *Kimbrough v. United States*, 552 U.S. 85, 108 (2007)).  "All sentencing proceedings are to begin by determining the applicable Guideline range."  *Id*.

Based upon the amount of fentanyl and other drugs the defendant possessed, the parties agree that his initial Base Offense Level is 28, pursuant to USSG § 1B1.3 and 2D1.1(a).  PSR ¶ 44, Plea Agreement ¶ 8.

Because defendant possessed a firearm in connection with his offense, pursuant to USSG § 2D1.1(b)(1), the parties agree his offense level should be increased by two-levels.  PSR ¶ 45, Plea Agreement ¶ 9.

///

---

[1]      As the PSR notes, there is a slight difference in the weight of the drugs seized as listed in the Criminal Complaint and the weight of the drugs seized as reflected in the final police reports. The government has sought clarification from law enforcement and has not received a definitive answer besides that they believe difference is the result of weighing the drugs with and without the law enforcement packaging material that was used to submit the drugs into the evidence property room.  The difference does not affect the guideline calculations.

**Government's Sentencing Memorandum**                                                                      **Page 3**

Defendant does not qualify for either the "safety valve," as outlined in 18 U.S.C. § 3553(f) and USSG § 2D1.1(b)(18), or as a "Zero Point Offender," pursuant to USSG § 4C1.1. Plea Agreement ¶¶ 10 - 11.

Based upon defendant's guilty plea and acceptance of responsibility, pursuant to USSG § 3E1.1, the parties ask that the Court grant the defendant a three-level reduction in his offense level.  PSR ¶¶ 51 - 52, Plea Agreement ¶ 12.

At the time of the change of plea, pursuant to 18 U.S.C. § 3553(a) and based upon the nature of the offense, defendant's indication at an early stage in the proceedings about his desire to resolve his case, the positive actions he had taken on pretrial release, how similarly situated defendants have been handled by the government and the courts, and to achieve a fair and just resolution of the case, the government agreed to recommend that the Court to grant the defendant a four-level downward variance in his overall offense level.  Plea Agreement ¶ 13.

The government's 3553(a) reduction would result in an Adjusted Offense Level of 23 and with a Criminal History Category of IV, the defendant's advisory sentencing guideline range would be between 70 to 87 months' imprisonment.

The U.S. Probation Office has asked the Court to grant the defendant an additional downward variance and impose a sentence of 60 months' imprisonment, to be followed by a four-year term of supervised release.  PSR Sentencing Recommendation at *1.

Defendant is currently in federal custody following a pretrial violation.

///

///

///

**Government's Sentencing Memorandum**                                              **Page 4**

C.     **Government's Recommended Sentence.**

Pursuant to 18 U.S.C. § 3553(a) and the supplemental materials that have been provided,

received, and reviewed, we ask the Court to impose a sentence of 37 months' imprisonment, to

be followed by a four-year term of supervised release.

The defendant was a street-level drug dealer, who pled guilty to possessing fentanyl with

the intent to distribute it.  Fentanyl is, as the Court knows, an extremely addictive, destructive,

and deadly poison that has been devastating the community.  According to law enforcement:

> Fentanyl and methamphetamine remain the primary drug threats, affecting
> community livability and contributing to drug-related overdose deaths and
> criminal activity, including crimes against persons and property in the HIDTA
> region.  In 2023, fentanyl was linked to 75.9% of overdose deaths in Oregon and
> 51% in Idaho.  Methamphetamine was present in 63.5% of Oregon's overdose
> deaths and 38% of Idaho's.  Together, these two substances accounted for 41.3%
> of overdose fatalities in both states.

OREGON-IDAHO HIGH INTENSITY DRUG TRAFFICKING AREA (HIDTA) 2026 THREAT
ASSESSMENT, 2025, at 5 (https://oridhidta.org/reports).

The defendant was not part of a larger drug trafficking organization and was not the

target of an ongoing investigation.  Rather, he was caught by local police officers after he fell

asleep in his car and, when they approached, they observed what appeared to be fentanyl pills

and a bag of white powder in the center console and front passenger seat.  But for the U.S.

Attorney's Office efforts in the federal prosecution downtown fentanyl dealers, the defendant's

case would likely have stayed in state court.

To the defendant's credit, he immediately acknowledged his guilt and desire to resolve

the case.  On December 12, 2022, when the defendant was released to pretrial supervision he

started working again and attending substance abuse treatment.  What followed was a long

**Government's Sentencing Memorandum**                                        **Page 5**

attempt by U.S. Pretrial Services to help stabilize the defendant, get him successfully through drug treatment, and help ensure he could remain clean and sober. While on pretrial supervision the defendant successfully completed both inpatient and outpatient substance abuse treatment. He also regularly worked and for a time created a pro-social environment for himself.

Unfortunately, often in response to a stressful event, the defendant has also hit times where he struggled and relapsed on drugs. Even when he relapsed, he never ran and would do whatever his pretrial officer wanted, to include engaging in additional treatment. His most recent relapses involving the abuse of nitrous oxide not only resulted in the new misdemeanor Hit and Run charge that is pending in Washington, but it also resulted in the defendant suffering severe and adverse mental health and cognitive effects. Those adverse cognitive effects were still noticeable when he was taken into custody in April 2025.

Accordingly, after evaluating the competing sentencing factors outlined in 18 U.S.C. § 3553(a) which include the nature and circumstances of the offense; the defendant's characteristics; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to provide just punishment for the offense; the need to protect the public from further crimes of the defendant; and, the need to provide the defendant with needed training or other corrective treatment, we believe a sentence of 37 months' imprisonment is reasonable. We ask the Court to impose it, to be followed by a four-year term of supervised release.

///

///

**Government's Sentencing Memorandum**                                    **Page 6**

At the time of sentencing we will ask the Court to dismiss Counts 2, 3, 4, and 5.

There is an appeal waiver.

Dated: May 19, 2026.                                  Respectfully submitted,

                                                     SCOTT E. BRADFORD
                                                     United States Attorney


                                                     /s/ *Scott Kerin*

                                                     SCOTT M. KERIN, OSB # 965128
                                                     Assistant United States Attorney